Mark Reaves
24 Ionia Street
Springfield, MA 01109
3 October 2005

Attorney James S. Whitcomb
Office of the Attorney General
Western Massachusetts Division
1350 Main Street
Springfield, Massachusetts 01103
Attorney James S. Whitcomb

Civil Action 04-30125-KPN

Attempt to Narrow issue of Wrongful Termination

Dear Attorney Whitcomb,

This letter is in response to your request for information on 26 July 2005. In a sincere attempt to narrow the issue of the complaint I request the following action be taken.

1. Massachusetts Army National Guard understand that the charge of Misconduct is dependant upon the soldier having committed the act of "Knowing" and "Wrongful" Use of a controlled substance.

  a. Knowledge of presence of substance in issue.
  (Must be proven)

  b. Knowledge of character (nature) of substance in issue.
  (Must be proven)

  c. These types of knowledge once proven will lead to wrongful use.

2. Massachusetts Army National Guard recognize that my Discharge from the Army and subsequent Separation from the Massachusetts Army National Guard was made in error.

3. Assist in the Application to the Army Board for Correction of Military Records in order to correct this mistake.

I have denied any drug use from the time my Commander notified me of a positive urinalysis on 26 November 1996. I have extensively researched the process of my separation beginning with my Commander MAJ Sellars through my Administrative Board. In this research I have found numerous deviations of regulatory guidelines which have allowed a systematic denial of due process along the way. I would like to frankly explain these errors. I submit that these errors some of which appear harmless have served to prejudice the outcome of my due process rights.

**These statements are factual and can be substantiated:**

1. Urinalysis Test process does not comport with applicable military regulation, AR 600-85, Commanders Guide to Urinalysis Collection Procedures.

  a. No Commanders Briefing was given by anyone in the Chain of Command Authorizing the test. Required by both regulations.
    (Sworn statements have been provided to investigators to suggest this was accomplished)

  b. No Alcohol and Drug Coordinator (ADCO) briefing was given by anyone in charge of ADCO duties. (Sworn statements were provided to investigators to suggest this was accomplished)

2. Laboratory results are inadmissible as they are not supported by a valid Chain of custody document.  AR 600-85, Commanders Guide to Urinalysis Collection Procedures.
  (When this issue is raised MAJ Henes, SJA states that "this issue was not raised at the Admin Board")

3. A FLAG order was initiated against me on 6 November 1996; however I was not notified about a positive urinalysis until 26 November 1996.
  (This appeared to demonstrate an automatic assumption of guilt by my commander.)

  a. Notification is required to be made to individual when results are known.  AR 600-85

4. Initial Legal Representative for myself MAJ Jordan provided ineffective assistance of counsel. He did not act with reasonable diligence and promptness in representing me.

  a. He never researched any case law involving my situation.

  b. He never provided an adequate defense for my situation.

  c. He began representation in December 1996 and withdrew in June 1997 citing conflict of interest.  He stated someone on the drug testing team was related to him.
    (This fact should have been known in December 1996)

5. Commander MAJ Sellars ordered that I attend Recruiting and Retention Course in February 1997.

  a. This action indicated that FLAG was removed and no action was pending; or

  b. This action indicated that Commander was willfully violating the regulation by ordering schooling while I was under a FLAG order.

6. I was never recognized by Detachment 4 STARC for my success at the Recruiting and Retention Course.

a. I attended Recruiting and Retention Course and was appointed Class Leader 1 through 28 March 1997, by the Chief, Strength Maintenance Training Center while attending this course. This is a very high accomplishment as there were senior NCOs in attendance.

7. Commander MAJ Nagel, on 6 October 1997 recommended my involuntary separation for personal and professional misconduct.

a. Prior to an Administrative Discharged Board this action is unjustified.

b. I was subsequently discharged from AGR status without benefit of an Administrative Discharge Board.

c. When Administrative Discharge Board is used for separation, Release and Separation are concurrent.
(When I did receive an Administrative Board guilt was already assumed since action against me had already been taken)

8. Legal Advisor to the Administrative Discharge Board MAJ Henes misinformed board members of the standards of UCMJ Article 112a Drugs - Wrongful Use.

MAJ Henes instruction:  "Ultimate Question to be Answered"

"Did SSG Reaves test positive for cocaine, and was the use wrongful?"

### Article 112a has four elements:

1. That (state the time and place alleged), the accused used _____ (a schedule_____controlled substance);

2. That the accused actually knew he used the substance;

3. That the accused actually knew that the substance he used was (_____) (or of a contraband nature) ;( and)

4. That the use by the accused was wrongful.

**MAJ Henes plain error in advising the board incorrectly was not harmless, error had a substantial influence on findings.**

9. Legal Advisor to the Administrative Discharge Board MAJ Henes failed to instruct "Ignorance of Fact" sua sponte, when raised by the evidence at the Discharge Board hearing.

   a. An issue of ignorance or mistake of fact may arise in cases where any type of knowledge of a particular fact is necessary to establish an offense. This issue must be instructed upon, "sua sponte", when raised by some evidence.

   b. The charge Drugs - Wrongful Use requires knowledge.

   c. The issue of ignorance arose with respect to the presence of drugs.

   I stated at the Administrative Discharge Review Board hearing that:
   "If in fact the sample in question was my sample, I did not know how drugs got into my system."

   This same statement was made to my commander MAJ Sellars after his initial counseling on the positive urinalysis on 26 November 1996.

   MAJ Henes plain error of failing to instruct sua sponte with respect to ignorance of fact was not harmless; error had a substantial influence on findings.

10. Legal Advisor to the Administrative Discharge Board MAJ Henes abandoned his neutral position by providing limited case law.

   a. Case law provided only served to refute my testimony of the lack of regulatory adherence in conducting the test.

   b. Case law in reference to the Offense of Wrongful Use is equally as important.

   c. Case law in reference to the Affirmative defense of innocent ingestion is equally important.

**MAJ Henes plain error of providing only limited case law was not harmless, error had a substantial influence on findings.**

   Administrative Discharge Board did not have an opportunity to be fair and impartial without the proper instructions on elements of charge, instructions and inadequate case law. This is no excuse to ignore the fact that the record should be corrected. The reason for these errors need not be known in order for justice to be served. The recognition that these errors must be corrected is the issue at hand. I do not seek to place individual blame on anyone. I am merely seeking to correct an injustice which has stigmatized me unfairly.

Massachusetts Army National Guard has treated me unfairly which is why I have been seeking to correct my record for nearly eight years. This disparate treatment could be regarded as a simple mistake or it could be a blatant act of discrimination. I have witnessed the Massachusetts Army National Guard proceeds with a similar charge upon a similarly situated soldier, not of my protected class; African American, Male (this similar soldier is a Caucasian, Female) the regulation establishes similar situation as defined by Rank, and Time in service. Not Duty Position or Work location as argued by the Massachusetts Army National Guard in the past. As this Caucasian, Female was identified by random urinalysis as positive for cocaine; she admitted to Knowing and Wrongful Use. Being a career soldier E6 with more than 12 years of service, she is said to have violated a special trust and confidence in a Non Commissioned Officer. She was after her Administrative Discharge Board allowed to remain in the Massachusetts Army National Guard. Why would Massachusetts Army National Guard fight so hard to discharge an African American Male who given the circumstances could be unjustly charged; however, make it policy to keep a Caucasian female career soldier who is an admitted drug abuser in the Guard.

I am hurt, insulted and humiliated. I volunteered for the Army in 1983 in New York, NY to leave behind a city infested with drugs and crime. I despise drug use and during my 12 year active duty career have had random tests at least 4 times per year. (48 tests all negative) I volunteered for Airborne, as soon as I was promoted to E5 I drove to my Branch office in Alexandria, VA and volunteered for Special Forces, already Special Forces Qualified for 5 years I volunteered for Ranger Training to be more effective as a Weapons Sergeant. I volunteered for Belgian Commando Training. I successfully completed the rigorous Expert Infantry Man course and Jumpmaster School.

I joined the New York National Guard in February 1996, urinalysis tested negative; moved to Massachusetts in July 1996 worked for Milton Bradley, urinalysis tested negative; MEPPS Physical on 30 September 1996, urinalysis tested negative.

I have always prided myself in being ready to deploy anywhere in the world in support of freedom. I have trained in a Special Operations operational tempo that is unmatched in all the areas of the U.S. Army. In order to excel as a Special Forces, Ranger, Jumpmaster for 10 years I have been extremely focused. I would never commit such a ridiculous act defiling myself and endangering my fellow soldiers.

I have exhausted all administrative remedies to resolve this issue. I take no pride in pursuing this case in a court of law. I am a soldier and have enjoyed the opportunity to serve my country. There should be no reason for Massachusetts Army National Guard to avoid the issues of this case. I believe that the somewhere within the Military Justice System lies the honesty and integrity which will surface to correct this injustice. I will continue as long as it takes to try to have my record corrected. I hope that Massachusetts Army National Guard would consider my proposal to narrow or resolve my complaint of wrongful termination.

I submit these statements under the pains and penalties of perjury that these statements are true to the best of my knowledge.


Respectfully Submitted


Mark Reaves
Pro, Se


MER

Clerk of Court US District Court for the
    District of Massachusetts, Western Section
Karen L. Goodwin, A.U.S.A (by mailing)
James S. Whitcomb, Asst Attorney General (by mailing)

CERTIFICATE OF SERVICE

I, Mark E. Reaves, Pro Se, hereby certify that on this 27th day of July, 2005, I served the foregoing Attempt to narrow issue of Wrongful Termination, by mailing, by first class mail as indicated below a true copy of the document to each of the following:

Office of the Attorney General        Karen L. Goodwin, A.U.S.A
James S. Whitcomb                     1550 Main Street, Room 310
1350 Main Street                      Springfield, MA  01103
Springfield, MA 01103